UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

JELA D. JONES,                                      Civil No. 06-2317 (JRT/SRN)

        Petitioner,

v.                                                 **REPORT AND RECOMMENDATION**

TERRY CARLSON, Warden,

        Respondent.

Jela D. Jones, Minnesota Correctional Facility – Moose Lake, 1000 Lakeshore Drive, Moose Lake, MN, 55767-9449, Petitioner, pro se.

Kimberly R. Parker, Assistant Minnesota Attorney General, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota, 55101, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Jela D. Jones for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been fully briefed by the parties, and referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DENIED, and this action should be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

In August 2000, Petitioner was charged with two counts of third degree criminal sexual conduct, in violation of Minn.Stat. § 609.344. The charges were based on accusations made by two sisters. The younger sister, who was fifteen years old at the time, reported that Petitioner engaged in sexual intercourse with her on several occasions.

The older sister, who was then seventeen years old, reported that Petitioner had entered her bedroom and put his finger into her vagina while she was sleeping.

In November 2000, a jury in the state district court for Le Sueur County, Minnesota, found Petitioner guilty on both of the charges against him.   On Count One, the charge involving the fifteen-year-old sister, Petitioner was convicted under Minn. Stat. § 609.344, subd. 1(b), for having intercourse with a child between the ages of thirteen and sixteen; and on Count Two, involving the seventeen-year-old sister, he was convicted under Minn.Stat. § 609.344, subd. 1(d), for "sexual penetration with another person" who was "physically helpless."

After the jury returned its verdict, the trial court judge obtained a pre-sentence report from Dr. Ian Heath, a "Staff Forensic Psychiatrist" at the St. Peter Regional Treatment Center, Minnesota Security Hospital.  (A copy of this report, [hereafter "Heath Report"], is included in Respondent's Appendix, [Docket No. 16], as an attachment to the document entitled "Memorandum In Support Of Respondent's Response To Petitioner's Post Conviction Relief Motion.")  Petitioner declined to be interviewed in connection with that report, but Dr. Heath apparently had access to substantial information about Petitioner from various sources, including police records and court records.  Dr. Heath listed and described Petitioner's many alleged sexual encounters with underage females, and concluded that: (a) Petitioner's current crimes "were motivated by his sexual impulses," (b) "he has demonstrated a predatory pattern of behavior in which he uses drugs and alcohol to render his victims more susceptible to his sexual advances," (c) "he demonstrates behavior typical of a patterned sexual offender,"  (d) "he remains a danger to public safety," and (e) "he remains at great risk of engaging in further criminal sexual behavior."  (Heath Report, pp.

2

5-6.)

The prosecution sought to have Petitioner sentenced as a "patterned and predatory sex offender" under Minn.Stat. § 609.108, and Petitioner's trial counsel opposed that effort. Based on the Heath Report, the trial court judge concluded, (without any further input from the jury), that Petitioner should be sentenced as a patterned and predatory sex offender. As a result, Petitioner was sentenced to fifteen years in prison – the statutory maximum prison term for a person convicted of violating Minn.Stat. § 609.344.  The trial judge also imposed a ten-year term of conditional release.[1]

Petitioner subsequently challenged his conviction and sentence in a direct appeal to the Minnesota Court of Appeals.  He argued that (1) he was deprived of his right to a fair and impartial trial, because the trial court denied his motion for change of venue based on his status as a racial minority in the county where he was prosecuted; (2) he was deprived of his right to testify on his own behalf, because the trial court ruled that if he did so, he could be impeached by otherwise inadmissible evidence of other crimes; and (3) his sentence was unconstitutional, because it was based on factual determinations that were made by a judge rather than a jury, and were not proven "beyond a reasonable doubt." Petitioner's third argument on direct appeal was based on the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), which was decided about a year before Petitioner was sentenced.

---

[1] Petitioner's fifteen-year sentence was imposed for his conviction under § 609.344, subd. 1(d), ("engaging in sexual penetration" with a person who is "physically helpless"). He received a 28-month sentence for his other offense, which was stayed.

The State Court of Appeals rejected Petitioner's first two claims on the merits, but partially upheld his sentencing claim based on Apprendi. State v. Jones, 647 N.W.2d 540 (Minn.App. 2002) [hereafter "Jones I"].   The Court of Appeals found that, under the applicable state sentencing statute, the maximum statutory sentence for Petitioner's offense was a total of fifteen years in prison and conditional release.  See id., at 548 ("to avoid unconstitutional application of law, the district court may reduce appellant's conditional release time to less than ten years so that the conditional release time plus the incarceration time do not exceed the statutory maximum of 15 years").

Following the Court of Appeals' decision, Petitioner sought further review of his change of venue claim, and the State sought further review of the Court of Appeals' ruling on the Apprendi issue.  The Minnesota Supreme Court denied Petitioner's request for further review, but granted the State's request.

The Minnesota Supreme Court found that Petitioner's original sentence did violate Apprendi – but not for the reason cited by the State Court of Appeals.  The Supreme Court concluded that the statutory maximum sentence for Petitioner's offense was fifteen years in prison, plus five years (but not ten years) of conditional release.  State v. Jones, 659 N.W.2d 748, 753 (Minn. 2003) [hereafter "Jones II"] ("we conclude that the jury verdict exposed Jones to a maximum executed sentence of 15 years plus an additional 5-year conditional release period").  Therefore, the Supreme Court set aside the Court of Appeals' sentencing ruling, (which directed the trial court to impose a prison term and a conditional release term not to exceed a total of fifteen years), and instructed the trial court to simply

reduce Petitioner's conditional release term from ten years to five years.  Id. at 754.[2]

In April 2004, Petitioner, by counsel, filed a post-conviction motion in the trial court, claiming that he was wrongly sentenced as a patterned and predatory sex offender, because (a) the sentence rested on factual determinations made – unconstitutionally – by a judge, (rather than a jury), based on a "preponderance of the evidence," (rather than proof "beyond a reasonable doubt"), and (b) apart from the constitutional issue, the evidence in the record simply was not sufficient to support the trial court's sentencing determinations.   Petitioner's post-conviction motion was based, in part, on a new psychologist's report, prepared by Dr. Peter Marston, which purportedly shows that Petitioner is not a patterned and predatory sex offender.  (A copy of Dr. Marston's report, which was prepared after Petitioner's direct appeal was complete, is attached to "Petitioner's Brief In Support Of Amended Habeas Corpus Petition," [Docket No. 25], [hereafter "Marston Report"].)   Petitioner further argued that he was denied effective assistance of counsel on his direct appeal, because his appellate counsel did not challenge the sufficiency of the evidence to support the trial judge's determination that he should be sentenced as a patterned and predatory sex offender.  (A copy of Petitioner's post-conviction motion, entitled "Petition For Post Conviction Relief And Notice To Attorney

---

[2]  As explained by the Minnesota Supreme Court:

"[W]e hold that the court of appeals did not err in determining that Jones's 10-year conditional release term imposed under Minn.Stat. § 609.108, subd. 6 violates the rule set forth in Apprendi.  However, the court of appeals did err in determining that the conditional release term plus the incarceration time could not exceed 15 years.  Accordingly, we remand to the district court to impose a 5-year conditional release term."

Jones II, 659 N.W.2d at 754.

General of Challenge to Constitutionality Of Minn. St. § 609.108, Subd. 1," is included in Respondent's Appendix, [Docket No. 16].)

While Petitioner's post-conviction motion was pending before the trial court, the United States Supreme Court handed down Blakely v. Washington, 542 U.S. 296 (2004), which addressed certain issues stemming from the Court's earlier decision in Apprendi. In Apprendi, the Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Blakely, the Court explained that, for purposes of deciding which sentencing determinations can be made by a judge (without a jury), "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 303-04 (emphasis in the original).

In Petitioner's pending post-conviction proceeding, the trial court judge recognized that if Blakely were retroactively applicable on collateral review, then Petitioner's sentence would have to be set aside, because it was based on factual determinations made by the trial judge alone, based on the preponderance of the evidence standard. The trial judge was uncertain about the retroactivity of Blakely, and elected to resolve that uncertainty in Petitioner's favor by conducting a new sentencing hearing. (A copy of the trial judge's ruling is included in Respondent's Appendix, [Docket No.16], identified as "Findings of Fact, Conclusions of Law, and Order" filed October 25, 2004.[3])

---

[3] In a "Memorandum" that is part of the trial judge's ruling, he explained, (at p. 7), that "this Court will not deny Petitioner's request for re-sentencing solely on the basis that Blakely might not retroactively apply to his case." (Emphasis in the original.)

After the trial judge's initial ruling on Petitioner's post-conviction motion, but before the contemplated re-sentencing occurred, the Minnesota Court of Appeals held that <u>Blakely</u> is <u>not</u> retroactively applicable on collateral review.  That ruling prompted the trial court judge to enter a new order, which vacated the earlier re-sentencing order, and summarily dismissed Petitioner's post-conviction motion.  (A copy of the trial judge's second post-conviction order – "Order for Dismissal" filed February 1, 2005 – is included in Respondent's Appendix, [Docket No. 16].)

The following day, Petitioner filed a motion for reconsideration, in which he renewed his claims based on <u>Blakely</u>, arguing that <u>Blakely</u>'s retroactivity had not yet been fully and finally resolved by the state appellate courts.  He also argued that the trial judge had failed to consider his original (pre-<u>Blakely</u>) claims – i.e., that there was insufficient evidence to sentence him as a patterned and predatory sex offender, and that he received ineffective assistance of counsel on appeal, (because his appellate counsel did not raise the insufficiency of the evidence claim).  A few days later, the trial judge issued a final order, which again denied Petitioner's application for post-conviction relief.  The order included a two-sentence explanation for the trial judge's ruling:

> "I.  That the issues raised in Defendant's petition for post-conviction relief have been heard and decided and are either final and unappealable or are not subject to review by this Court (i.e. adequacy of appellate counsel).
>
> II.  That present case law fails to support the remedies sought by Defendant and also fails to support the procedural posture argued by Defendant."

(Respondent's Appendix, "Order on Motion," dated February 7, 2005.)

Petitioner then filed another appeal, asking the Minnesota Court of Appeals to review the claims raised in his post-conviction motion.  The appeal was stayed, because the issue

7

of <u>Blakely</u>'s retroactivity was then pending before the Minnesota Supreme Court in another case. After the State Supreme Court ruled that <u>Blakely</u> is <u>not</u> retroactively applicable on collateral review, (<u>see</u> <u>State v. Houston</u>, 702 N.W.2d 268 (Minn. 2005)), the Court of Appeals gave the parties an opportunity to complete their briefing in Petitioner's pending post-conviction appeal.

On March 30, 2006, the Court of Appeals entered a three-page unpublished "Order Opinion," which upheld the denial of Petitioner's post-conviction motion. (A copy of the "Order Opinion" is in Respondent's Appendix.) The Court of Appeals discussed only the <u>Blakely</u> issue, concluding that "[b]ecause <u>Blakely</u> does not apply retroactively to appellant's sentence, the district court properly denied his petition for postconviction relief." ("Order Opinion," at p. 3.)

Petitioner then sought further review in the Minnesota Supreme Court, contending that the lower courts had erred by (a) failing to consider his post-conviction claim of ineffective assistance of appellate counsel, and (b) concluding that <u>Blakely</u> is not retroactively applicable to his case. (A copy of Petitioner's post-conviction "Petition For Review Of Decision Of Court Of Appeals" is included in Respondent's Appendix.) The Minnesota Supreme Court summarily denied Petitioner's application for further review in a one-sentence order dated May 16, 2006.

Petitioner then brought the present habeas corpus action. This Court initially recommended that the action should be summarily dismissed, because it appeared, based on the information provided by Petitioner, that the case was time-barred under the one-year statute of limitations imposed by 28 U.S.C. § 2254(d). However, the District Court Judge declined to adopt that recommendation based on additional information regarding

Petitioner's post-conviction proceedings, which was not included in Petitioner's original submissions. Thereafter, Respondent filed a motion to dismiss this action, (Docket No. 14), because Petitioner had failed to exhaust his state court remedies for all of the claims listed in his petition. Petitioner responded to the motion to dismiss by requesting leave to file an amended petition that would set forth only fully-exhausted claims. (Docket No. 18.) This Court recommended that Petitioner's request to delete his unexhausted claims should be granted, and, concomitantly, that Respondent's motion to dismiss should be denied. (Docket No. 22.) That recommendation was adopted by the District Court Judge. (Docket No. 24.) Therefore, the matter is now before the Court on Petitioner's <u>amended</u> habeas corpus petition. (Docket No. 23.)

The amended petition lists six grounds for relief:

(1) That the trial court erroneously denied Petitioner's motion for change of venue.

(2) That Petitioner's sentence should be set aside, because (a) the sentence was imposed in violation of the constitutional requirements identified in <u>Apprendi</u>, and (b) the evidence does not support the trial judge's determination that Petitioner is a patterned and predatory sex offender.

(3) That Petitioner was denied effective assistance of counsel on direct appeal, because his attorney failed to raise the arguments set forth at ground two, above.

(4) That <u>Blakely</u> is retroactively applicable on collateral review, and Petitioner's sentence should be vacated pursuant to <u>Blakely</u>.

(5) That the state courts erroneously failed to adjudicate Petitioner's claims of ineffective assistance of appellate counsel during his state post-conviction proceedings.

(6) That the Minnesota Supreme Court wrongly determined (on direct appeal) that

9

Petitioner's modified sentence, (i.e., a fifteen-year prison term and a five-year term of conditional release), was permissible under Apprendi.

For the reasons discussed below, the Court finds that Petitioner is not entitled to a writ of habeas corpus on any of these claims.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), prescribes the standards that govern this Court's substantive review of a state prisoner's habeas corpus claims.  The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts.  The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

"A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's constitutional claims is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's resolution of a constitutional claim is based on factual determinations that could not reasonably be derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims.  Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts that caused him to be deprived of his federal constitutional rights.  Moreover, he must show

that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in <u>Williams</u>.

## III. DISCUSSION

### A. <u>Ground One:  Change of Venue</u>

Petitioner initially claims that he is entitled to a writ of habeas corpus, because the trial court judge wrongly denied his motion for a change of venue.  He contends that he could not receive a fair trial in the county where he was prosecuted, because most of the potential jurors in that county are white, while he is African-American.

In Petitioner's direct appeal, the Minnesota Court of Appeals cited <u>Groppi v. Wisconsin</u>, 400 U.S. 505, 509 (1971), and noted that the case holds that "due process includes the right to an impartial jury." <u>Jones I</u>, 647 N.W.2d at 544.  Thus, the State Court of Appeals obviously recognized that defendants in criminal cases have a constitutional right to be tried before an impartial and unbiased jury.  However, the Court of Appeals rejected the notion that a change of venue is constitutionally required whenever a member of a racial minority is being tried in a community that is predominantly white.  The Court held that a change of venue is required only when the defendant shows he will suffer some "<u>actual prejudice</u> resulting from the jury's racial composition." <u>Id</u>. at 545 (emphasis added). Petitioner's change of venue claim was denied, because the Court of Appeals found that he was unable to satisfy the actual prejudice requirement.

In Petitioner's subsequent request for further review in the Minnesota Supreme Court, he argued that he should not have been required to show actual prejudice, because the racial composition of the county in which he was prosecuted caused "a built-in exclusionary effect that prohibits a fair and impartial jury for minorities." (Respondent's

Appendix, "Petition For Review Of Decision Of Court Of Appeals," at p. 6.)  Petitioner makes the same argument here.[4]

The Court finds that Petitioner cannot be granted a writ of habeas corpus on his change of venue claim, because he has not shown that the state courts' adjudication of that claim is "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent.[5]  Petitioner has not cited any Supreme Court decision that holds, or implies, that criminal defendants have a constitutionally-guaranteed right to be tried in a county in which the population, (and hence the pool of potential jurors), includes some specified minimum percentage of individuals who are members of the same race as the defendant.

---

[4]  In Petitioner's request for further review on direct appeal, he did not challenge the Court of Appeals' determination that he had failed to show actual prejudice.  Instead, he argued that "the fair hearing requirement of due process" does not require a showing of actual prejudice.  Because that is the only constitutional argument in support of the change of venue claim that was fairly presented to the Minnesota Supreme Court, it is the only such argument for which Petitioner has exhausted his available state court remedies, and, accordingly, it is the only such argument that can properly be considered here.  See Picard v. Connor, 404 U.S. 270, 276, (1971) ("we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts"); Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) ("exhaustion doctrine requires a state prisoner to file for any available discretionary review in the state's highest court prior to filing for federal habeas relief"), citing O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999).  In other words, this Court can only consider the change of venue claim that was presented to the Minnesota Supreme Court.

[5]  The alternative basis for granting federal habeas relief – i.e., that the apposite state court decision is "based on an unreasonable determination of the facts" – is inapplicable here, because Petitioner's current change of venue claim presents a purely legal issue – namely, whether Petitioner is constitutionally entitled to a change of venue simply because of the statistical unlikelihood that he would be tried by a jury that included members of his own race.

Moreover, the Court notes, (as did the Minnesota Court of Appeals on Petitioner's direct appeal), that the Eighth Circuit Court of Appeals has squarely rejected the argument that Petitioner is advancing here.  In <u>Mallett v. Bowersox</u>, 160 F.3d 456 (8th Cir. 1998), <u>cert denied</u>, 528 U.S. 853 (1999), an African-American habeas corpus petitioner claimed that his constitutional rights were violated when his criminal trial was transferred to a county with very few African-American residents.  He argued, just as Petitioner argues here, that it is unnecessary to show a jury's actual prejudice, if the population of the local community includes too few members of the defendant's race.  However, the Eighth Circuit rejected the notion "that prejudice may be inferred simply because the jury included no jurors of [the petitioner's] race."  <u>Id</u>. at 461.  Furthermore, the Court cited <u>Taylor v. Louisiana</u>, 419 U.S. 522, 538 (1975), to support the proposition that, in fact, "defendants are <u>not</u> entitled to a jury of a particular racial composition."  <u>Id</u>. (emphasis added).

The Court of Appeals also pointed out in <u>Mallett</u> that a habeas petitioner normally "must show the actual existence of prejudice to prove he was denied the due process guarantee of a fundamentally fair trial."  <u>Id</u>. at 460, citing <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961).  This observation supports the State Court of Appeals' conclusion that Petitioner "cannot show a violation of his due process rights without showing actual prejudice."  <u>Jones I</u>, 647 N.W.2d at 544.

In light of <u>Mallett</u>, the Court finds that the Minnesota Court of Appeals' resolution of Petitioner's change of venue claim is not contrary to, or an unreasonable application of, any United States Supreme Court precedent.  Therefore, Petitioner cannot be granted a writ of habeas corpus on that claim.

B.  Ground Two: Apprendi – Sufficiency of the Evidence

Petitioner's second ground for relief actually consists of two separate claims, (which are only slightly related to each other).  First, he challenges that the Minnesota Supreme Court's resolution of the Apprendi claim that he raised in his direct appeal.  Second, he claims that even if Apprendi is not applicable, the evidence before the trial court judge at sentencing was not sufficient to support the judge's determination that he should be sentenced as a patterned and predatory sex offender.  These two arguments will be considered separately.

(i) **Apprendi** claim

Petitioner contends that his final sentence – i.e., the fifteen-year prison term and five-year conditional release term that was prescribed by the Minnesota Supreme Court on direct appeal – is unconstitutional under Apprendi.  He claims that his sentence violates Apprendi, because it exceeds the statutory maximum sentence for his offense, based on factual determinations made by the trial judge, rather than the jury.  The Court disagrees.

The jury in Petitioner's case found that he had committed all of the elements of the offenses for which he was charged, namely two counts of third degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(b) and (d).  The statutory maximum sentence for those offenses, without any additional findings by the trial judge, is fifteen years in prison and five years of conditional release.  The fifteen-year prison term that Petitioner received is the statutory maximum for anyone convicted of violating § 609.344, subd. 1, regardless of whether the offender is, or is not, found to be a patterned and predatory sex offender.  Minn.Stat. §§ 609.344, subd. 2.  Furthermore, a five-year term of conditional release is a mandatory component of every sentence imposed for a violation

of § 609.344, regardless of whether the offender is, or is not, found to be a patterned and predatory sex offender.  See Jones II, 659 N.W.2d at 753 ("[t]he imposition of the 5-year conditional release term under Minn.Stat. § 609.109, subd. 7 is 'a mandatory aspect of the sentence to be imposed by the district court' for offenders convicted under Minn.Stat. § 609.344").

Thus, the statutory maximum sentence that Petitioner could have received, based on the jury's verdict alone, was the fifteen-year prison term and five-year conditional release term that was prescribed by the Minnesota Supreme Court.  Id. ("the jury verdict exposed Jones to a maximum executed sentence of 15 years plus an additional 5-year conditional release period").

According to Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490 (emphasis added).  Because Petitioner's sentence did not exceed the statutory maximum for the offenses found solely by the jury, (i.e., without any additional factual determinations by the trial judge), the sentence did not violate Apprendi.

### (ii) Insufficiency of Evidence

The second half of Petitioner's second ground for relief appears to be wholly unrelated to Apprendi.  Petitioner contends that, aside from any constitutional limitations on fact-finding by judges during the sentencing process, the record in this case simply does not support the trial judge's determination that Petitioner is a patterned and predatory sex offender under Minnesota law.  Respondent contends that Petitioner's insufficiency of the sentencing evidence argument is procedurally defaulted, because it was never fairly

presented to the Minnesota Supreme Court.  That argument is well-taken.

It is well established that a federal court may not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982).  This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners.  O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845 (emphasis added).  In other words, a prisoner must fairly present all of his constitutional claims to the highest available state court before seeking relief in federal court.  Id. at 847.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)").  Thus, in Minnesota, a claim must be fairly presented to the Minnesota Supreme Court before it can be raised and decided in a federal habeas corpus proceeding.

When a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion

17

requirement as to that claim, then the claim technically is not "unexhausted," but rather, it has been "procedurally defaulted."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997).  See also Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006) ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'"), cert. denied, 127 S.Ct. 980 (2007), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.) (en banc), cert. denied,  517 U.S. 1215 (1996); Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005) ("if no state court remedy is available for the unexhausted claim – that is, if resort to the state courts would be futile – then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim'"), cert. denied, 546 U.S. 1179 (2006) (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)).

A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim.  Coleman, 501 U.S. at 750.

The rules governing procedural default have been summarized by the Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in

18

a fundamental miscarriage of justice".

Id.[6]

In this case, Petitioner presented only one claim to the Minnesota Supreme Court in his direct appeal, namely the "change of venue" claim discussed above.  In Petitioner's post-conviction appeal, he presented only two claims to the Minnesota Supreme Court:  (1) an ineffective assistance of counsel claim, and (2) a two-part claim based on Blakely.  Thus, Petitioner's current insufficiency of the sentencing evidence claim has never been fairly presented to the State Supreme Court.   Furthermore, Minnesota law precludes Petitioner from bringing this claim before the state courts at this late date.  See McCall, 114 F.3d at 757 ("Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief'"), citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976); Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995).  See also Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007) ("matters raised or known but not raised in an earlier petition for postconviction relief will generally not be considered in subsequent petitions for postconviction relief"), citing  Spears v. State, 725 N.W.2d 696, 700 (Minn. 2006), cert. denied, 127 S.Ct. 2985 (2007).  Because Petitioner's current

_____

[6]  The "fundamental miscarriage of justice" exception (to overcome a procedural default) is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).  Petitioner has not asserted the "actual innocence" exception, and the Court notes that he has admitted he committed at least one of the crimes at issue in this case.  See Marston Report, p. 7 (Petitioner "said that he had intercourse with [the fourteen-year-old victim] on several occasions during the summer of 2000... and that he also knew that she was underage").

insufficiency of the sentencing evidence claim has never been fairly presented to the Minnesota Supreme Court, and it is now too late to do so, that claim has been procedurally defaulted.

Petitioner has argued that his insufficiency of the evidence claim was not raised on direct appeal due to the ineffective assistance of his appellate counsel.  Ineffective assistance of counsel can constitute sufficient "cause" to overcome a procedural default, (Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002)); but "in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court."  Id., citing Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000).

Furthermore, "'attorney error that results in a procedural default' is not cause [that will excuse the procedural default] unless the attorney's performance was constitutionally deficient."  Armstrong, 418 F.3d at 927, quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).  This means that "[i]n order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004), cert denied, 543 U.S. 1067 (2005), citing Edwards, supra.  Thus, Petitioner's claim of ineffective assistance of appellate counsel cannot excuse his procedural default unless the ineffective assistance claim itself is independently sustainable.  For reasons discussed immediately below, the Court finds that Petitioner's ineffective assistance of counsel claim is not sustainable.  Therefore, Petitioner cannot overcome his procedural default of his insufficiency of the sentencing evidence claim, and that claim must be summarily rejected.

C.  Ground Three: Ineffective Assistance of Counsel

Petitioner claims that he was deprived of his constitutional right to effective assistance of counsel on appeal, because his attorney did not challenge the trial judge's determination that he should be sentenced as a patterned and predatory sex offender.

Normally, ineffective assistance of counsel claims are subject to the standard of review prescribed by 28 U.S.C. § 2254(d), (see pp. 10-12, supra), just like any other habeas corpus claim.  In this case, however, the prescribed standard of review is not readily applicable, because none of the state courts explained why Petitioner's ineffective assistance of appellate counsel claim was rejected.  It appears that Petitioner raised this claim in his post-conviction motion, and in his subsequent appeals to the Minnesota Court of Appeals and the Minnesota Supreme Court.  It also appears that the trial court and appellate courts found Petitioner's ineffective assistance of counsel claim to be unsustainable, (as none of those courts afforded Petitioner any relief).  However, the state courts did not discuss their reasons for rejecting Petitioner's claim, which complicates the federal habeas review process prescribed by § 2254(d).

The Eighth Circuit Court of Appeals has suggested that when an actionable federal habeas claim "was not 'adjudicated on the merits' [in the state courts] within the meaning of Section 2254(d), 'we likely should apply the pre-AEDPA standard of review.'" Clemons v. Luebbers, 381 F.3d 744, 755 (8th Cir. 2004), cert. denied, 546 U.S. 828 (2005), quoting Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).  This suggestion will be followed here, which means that Petitioner's current ineffective assistance of counsel claim will be analyzed under the less deferential standard of review that was applied in habeas corpus cases before AEDPA.  In effect, the Court will review the claim de novo.  See Henderson

21

v. Minnesota, Civil No. 03-6507 (JRT/FLN), 2005 WL 5168551 (D.Minn. 2005) (Report and Recommendation of Magistrate Judge Franklin L. Noel) at * 11 ("when a federal court is asked to review constitutional claims that were not previously adjudicated in the state courts..., it is best to review the claims independently, under pre-AEDPA standards").[7]

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must establish (1) that his attorney's performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir.), cert. denied, 519 U.S. 956 (1996).  When evaluating the adequacy of an attorney's representation, this Court must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance." Strickland, 466 U.S. at 689.  "Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight."  Garrett, 78 F.3d at 1301.

---

[7]   Respondent has argued that Petitioner's ineffective assistance claim was procedurally defaulted.  This argument is based on a single sentence appearing in the trial court's order denying Petitioner's motion for reconsideration of his post-conviction motion, to wit:  "That the issues raised in Defendant's petition for post-conviction relief have been heard and decided and are either final and unappealable or are not subject to review by this Court (i.e., adequacy of appellate counsel)."  (See p. 7, supra.)  This one ambiguous sentence, which was not subsequently endorsed by the Minnesota Court of Appeals, does not adequately demonstrate that Petitioner's ineffective assistance of counsel claim was procedurally defaulted – especially in light of Minnesota caselaw holding that claims of ineffective assistance of appellate counsel can properly be raised in a post-conviction motion.  See e.g., Robinson v. State, 567 N.W.2d 491, 495 (Minn.1997) ("claim for ineffective assistance of appellate counsel was not known at the time of [defendant's] direct appeal, so it was properly raised in a petition for postconviction relief").

In order to satisfy the second Strickland requirement, a habeas petitioner must make "a showing of prejudice sufficient to undermine confidence in the outcome of the trial." Id. at 1302. More specifically, the petitioner must demonstrate that there is a "reasonable probability that the proceeding would have ended in a different result without counsel's errors." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995). See also Strickland, (defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

A petitioner can challenge the propriety of his sentence, (as opposed to his conviction), based on a claim of ineffective assistance of counsel, but the two Strickland requirements – incompetence and prejudice – are fully applicable to such claims. Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998), cert. denied, 525 U.S. 1090 (1999). To satisfy the prejudice requirement for a sentence-related ineffective assistance claim, the petitioner must show that a different sentence probably would have been imposed, if his attorney had provided competent legal representation. Id.; Auman, 67 F.3d at 162.

Here, the Court finds that Petitioner is unable to satisfy the requirements of Strickland. Petitioner contends that his appellate counsel did not review the transcripts of his sentencing hearings, and she therefore failed to recognize that the issue of whether he was a patterned and predatory sex offender had been contested by trial counsel during the sentencing process. This argument is unavailing, because even if appellate counsel did not review the sentencing transcripts, she obviously was cognizant of the potential challenge to Petitioner's sentence. Indeed, Petitioner has repeatedly asserted, both here and in the state courts, that he "urged" his appellate counsel to challenge the trial judge's

23

determination that he is a patterned and predatory sex offender.  ("Memorandum In Support Of Petition For Post Conviction Relief," [Docket No. 16], p. 3; Amended Petition, [Docket No. 23], p. 6; "Petitioner's Brief In Support Of Amended Habeas Corpus Petition," [Docket No. 25], p. 36.)  Thus, it is clear that Petitioner's appellate counsel did <u>not</u> overlook the insufficiency of the evidence argument, but rather, appellate counsel made a deliberate decision to omit that argument from Petitioner's direct appeal, even though Petitioner "urged" her to raise that argument.[8]

Furthermore, the record shows that Petitioner's counsel had plausible reasons for not raising the insufficiency of the evidence argument, despite Petitioner's insistence that she should do so.  Most notably, the insufficiency of the evidence argument was effectively foreclosed by the Heath Report, which provided substantial support for the trial judge's determination that Petitioner should be sentenced as a patterned and predatory sex offender.

In Minnesota, a convicted sex offender will be sentenced as a patterned and predatory sex offender, if there is evidence showing (1) that he has been convicted of one of the sex offenses listed in the applicable statute, (2) that he is "a danger to public safety," and (3) that his "criminal sexual behavior is so engrained that the risk of reoffending is great without intensive psychotherapeutic intervention or other long-term controls."  Minn.Stat.

---

[8]  Petitioner filed his own "Pro Se Supplemental Brief" on direct appeal, in which he presented numerous arguments that were not raised in his appellate counsel's brief.  (A copy of Petitioner's pro se brief is included in Respondent's Appendix, [Docket No. 16].)  The pro se brief shows that Petitioner's attorney elected to omit several arguments from her brief, which Petitioner thought (erroneously) could be successful.  It is also interesting to note that Petitioner now contends his insufficiency of the sentencing evidence claim was a crucial claim – a claim that he allegedly urged his attorney to raise, and one that any competent attorney allegedly would have raised – and yet Petitioner himself did not see fit to even mention this claim in his own pro se brief.

§ 609.108, subd. 1.  In this case, Petitioner was convicted of one of the listed sex offenses, (namely third degree criminal sexual conduct in violation of § 609.344), and the Heath Report provided evidence showing that the other two statutory conditions were met.  The Heath Report expressly states that Petitioner "remains a danger to public safety," and that his "sexual behavior is so engrained that he remains at great risk of engaging in further criminal sexual behavior."  In light of the Heath Report, it is not surprising that appellate counsel chose not to argue that there was insufficient evidence to support the trial judge's determination that Petitioner is a patterned and predatory sex offender.

Petitioner's appellate counsel has offered another plausible reason for her decision to not raise the insufficiency of the evidence argument on direct appeal, namely because Petitioner "failed to participate in the sex offender evaluation."  ("Petitioner's Brief In Support Of Amended Habeas Corpus Petition," [Docket No. 25], Appendix 1, Affidavit of Mary M. McMahon, at p. 3, ¶s 10 and 12.)  Petitioner contends that he did not participate in the sex offender evaluation, because his trial counsel advised him to exercise his Fifth Amendment protection against self-incrimination.  Petitioner's trial counsel may have had good reason to advise Petitioner not to talk to Dr. Heath, and Petitioner may have had good reason to follow that advice – i.e., they both knew that Petitioner would incriminate himself if he responded honestly to the questions posed to him.  (See n. 6, supra.)  However, as Petitioner's appellate counsel obviously recognized, Petitioner's failure to participate in the evaluation made it much more difficult, (if not impossible), to challenge the trial judge's determination that Petitioner should be sentenced as a patterned and predatory sex offender.  Even Petitioner's own expert recognized that without Petitioner's participation in the evaluation process, "it would have been possible to draw such conclusions as Dr. Heath

25

did."  (Marston Report, p. 17.)

In sum, Petitioner's appellate counsel had good reason <u>not</u> to challenge the trial judge's determination that Petitioner is a patterned and predatory sex offender under Minnesota law.  That argument would have had little chance of success in the state appellate courts, (for the reasons noted above), and it might have detracted from other arguments that were more meritorious.  As our Court of Appeals has pointed out –

> "Law is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree.  Among the most difficult are decisions as to what issues to press on appeal. Lawyers have often been told that it is not good strategy to argue on appeal every conceivable point contained in a record."

<u>Pryor v. Norris</u>, 103 F.3d 710, 714, n. 5 (8th Cir. 1997).  This Court cannot find that the legal representation provided by Petitioner's appellate counsel "fell below an objective standard of reasonableness," because she chose not to challenge the sufficiency of the sentencing evidence.  Therefore, Petitioner has not satisfied the first prong of the <u>Strickland</u> test.

Petitioner has also failed to satisfy <u>Strickland</u>'s prejudice requirement, because he has not shown that his insufficiency of the evidence argument, would have been successful if it had been raised on direct appeal.  <u>See</u> <u>Zinzer v. State of Iowa</u>, 60 F.3d 1296, 1299 (8th Cir. 1995) (where "claim was unlikely to succeed on direct appeal, appellate counsel did not prejudice [habeas petitioner] by failing to raise the claim").

Aside from the insufficiency of the evidence argument, Petitioner also contends that he received ineffective assistance of counsel on appeal, because his attorney failed to challenge the constitutionality of his sentence.  This argument warrants no discussion, because Petitioner's appellate counsel did, in fact, challenge the constitutionality of his

sentence, arguing (with some success) that the trial court failed to comply with <u>Apprendi</u>.[9]

    D.  <u>Ground Four: Blakely's Applicability On Collateral Review</u>

In Petitioner's fourth claim for relief, he contends that <u>Blakely</u> should be applied to his case, even though his conviction and sentence became final on direct appeal before <u>Blakely</u> was decided.  He argues that <u>Blakely</u> is retroactively applicable on collateral review because (a) the Supreme Court's decision in <u>Blakely</u> is not a "new rule," but merely an inevitable extension of <u>Apprendi</u>, and (b) if <u>Blakely</u> does represent a "new rule," it must be treated as a "watershed rule" that is retroactively applicable on collateral review.  These arguments were raised and rejected in Petitioner's state post-conviction proceedings.  Therefore, Petitioner has fully exhausted his state court remedies for his <u>Blakely</u> retroactivity claims.  However, he cannot be granted a writ of habeas corpus for those claims, because the state courts' resolution of those claims is not contrary to, or an unreasonable application of, any clearly established Supreme Court precedent.

The Supreme Court has not explicitly addressed the issue of whether <u>Blakely</u> is retroactively applicable on collateral review.  Therefore, Petitioner cannot show that the state courts' adjudication of his <u>Blakely</u> arguments is "contrary to" a Supreme Court decision that is directly on point.  <u>See</u> <u>Middleton v. Roper</u>, 498 F.3d 812, 815 (8th Cir. 2007) ("'A decision is 'contrary to' federal law ... if a state court has arrived 'at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or if it 'confront[ed]

_____

    [9] If Petitioner is arguing that his attorney should have anticipated the Supreme Court's later decision in <u>Blakely</u>, and raised a <u>Blakely</u>-style claim on direct appeal, that argument must also be rejected.  An attorney does not render constitutionally inadequate legal representation simply because he or she fails to anticipate, and raise a claim based upon, some <u>future</u> court decision.  <u>Wajda v. United States</u>, 64 F.3d 385, 388 (8th Cir. 1995) ("counsel's performance is not deficient by failing to predict future developments in the law").

facts that are materially indistinguishable from a relevant Supreme Court precedent' but arrived at an opposite result.'"), cert. denied, 2008 WL 503479 (2008), quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir.2005) (quoting Williams, 529 U.S. at 405).

Petitioner is also unable to show that the state courts' resolution of his Blakely arguments constitutes an unreasonable application of apposite Supreme Court caselaw. It appears that most (if not all) of the federal courts that have considered whether Blakely is retroactively applicable on collateral review have reached the same conclusion that the state courts reached in Petitioner's case.  Most notably, the Eighth Circuit Court of Appeals has expressly held that "Blakely does not apply retroactively to convictions or sentences on collateral review."   United States v. Stoltz, 149 Fed.Appx. 567, 569 (8th Cir. 2005) (unpublished opinion), cert. denied, 547 U.S. 1028 (2006).  In Stoltz, the Court noted that "[e]very circuit court to consider the issue has held that Blakely is not retroactive."  Id., citing Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir.2005); Lloyd v. United States, 407 F.3d 608, 610-11, 615-16 (3rd Cir.), cert. denied, 546 U.S. 916 (2005); United States v. Price, 400 F.3d 844, 848 (10th Cir.), cert. denied, 546 U.S. 1030 (2005); Varela v. United States, 400 F.3d 864, 866-67 (11th Cir.), cert. denied, 546 U.S. 924 (2005); Carmona v. United States, 390 F.3d 200, 202 (2nd Cir.2004); Cuevas v. Derosa, 386 F.3d 367, 367 (1st Cir. 2004).  In light of the overwhelming body of federal caselaw holding that Blakely is not retroactively applicable on collateral review, it cannot be said that the state courts' resolution of Petitioner's Blakely claim represents an "unreasonable application" of Supreme Court precedent.  Therefore, Petitioner's fourth claim for habeas corpus relief must be rejected.

E.  Ground Five: Failure To Address Ineffective Assistance Claim

Petitioner next argues, at Ground Five of his petition, that the state courts "erred by refusing to consider" the ineffective assistance of appellate counsel claim that he raised in his post-conviction motion.  This claim is also unavailing.

One of the most basic principles of federal habeas corpus jurisprudence is that federal courts can grant relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Thus, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  See also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

Here, Petitioner has not alleged that the state courts violated his federal constitutional rights by not adequately addressing his claim of ineffective assistance of appellate counsel.  Instead, Petitioner contends that the state court misapplied Minnesota's state procedural rules by failing to discuss the merits of that claim.  (See "Petitioner's Brief In Support Of Amended Habeas Corpus Petition," [Docket No. 25], pp. 49-51.)  It is well-settled, however, that state court interpretations and applications of state procedural rules are not subject to federal habeas review.  Estelle, 502 U.S. at 67 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  See also Clemons, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules").

Furthermore, the federal Constitution does <u>not</u> entitle Petitioner to a written opinion on his ineffective assistance claims.  <u>See</u> <u>Riley v. Lockhart</u>, 726 F.2d 421, 422 (8th Cir.1984) (habeas petitioner's claim, that his federal constitutional rights were violated because state courts denied his post-conviction motion "without issuing a written opinion setting forth findings of fact and conclusions of law," is rejected as "meritless").

Finally, this Court has already determined that Petitioner was not deprived of his constitutional right to effective assistance of counsel on appeal. (<u>See</u> Discussion at pp. 22-26, <u>supra</u>.)  Petitioner cannot be granted a writ of habeas corpus based on the state courts' alleged failure to address a claim that has been found to be meritless.

F.  <u>Ground Six: Constitutionality Of Five-Year Conditional Release Term</u>

In Petitioner's sixth and final claim for relief, he argues that the Minnesota Supreme Court violated <u>Apprendi</u> by directing the trial court to impose a five-year term of conditional release.  The State Supreme Court specifically determined that the five-year conditional release term could be imposed, without violating <u>Apprendi</u>.  That determination is not contrary to, or an unreasonable application of, the Supreme Court's decision in <u>Apprendi</u>.

As discussed above, (<u>see</u> pp. 6, 16, <u>supra</u>), the Supreme Court held in <u>Apprendi</u> that a state court judge cannot impose a sentence that exceeds the statutory maximum based on factual determinations made by the judge, rather than a jury.  Conversely, however, if the judge imposes a sentence that does <u>not</u> exceed the maximum punishment authorized by statute, then there is no violation of the rule established by <u>Apprendi</u>.

In this case, the Minnesota Supreme Court found that the maximum sentence that can be imposed for an individual who has been convicted of third degree criminal sexual conduct, (in the absence of additional post-verdict fact-finding), is fifteen years in prison

pursuant to Minn.Stat. § 609.344, subd. 2, plus five years of conditional release pursuant to Minn.Stat. § 609.109, subd. 7. See Jones II, 659 N.W.2d at 752 ("notwithstanding the maximum sentence otherwise applicable" – i.e., the fifteen-year prison term prescribed by § 609.344, subd. 2 – "offenders sentenced for a violation of § 609.344, who have no prior sex offenses, are also subject to a mandatory 5-year conditional release term under Minn.Stat. § 609.109, subd. 7 (2000)").

Again, under Minnesota law, the statutory maximum sentence for third degree criminal sexual conduct, based on the jury verdict alone, is not just fifteen years in prison, (as Petitioner contends), but rather, it is fifteen years in prison and five years of conditional release. (See Discussion at pp. 15-16, supra.) Therefore, the sentence ordered by the Minnesota Supreme Court in Petitioner's case does not exceed the statutory maximum, which means that it is not proscribed by Apprendi.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on any of the six grounds for relief that he has presented in his amended habeas corpus petition. The Court will therefore recommend that Petitioner's amended habeas petition be denied, and that this case be dismissed with prejudice.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's amended petition for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 23), be DENIED; and

2.  This action be DISMISSED WITH PREJUDICE.


Dated:   May 28, 2008

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 12, 2008** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.